[Crim. Nos. 6696, 6697.   In Bank.   Dec. 2, 1960.]

THE PEOPLE, Respondent, v. GARFIELD HAMMOND, Appellant.

[Two Cases.]

848

Arthur D. Klang for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

COUGHLIN, J. pro tem.*—The defendant appeals from judgments of imprisonment in the state prison entered in cases arising out of two informations filed against him. In the first, he and his wife were charged in separate counts with three offenses involving narcotics, each allegedly occurring on January 11, 1957, i.e., (1) a sale of heroin, (2) possession of heroin, and (3) maintaining a place for the sale and use of a narcotic, being violations of sections 11500 and 11557 of the Health and Safety Code. In the second he, alone, was charged in four separate counts with four other such violations, i.e., (1) the sale of heroin on December 5, 1956, (2) the transportation of heroin on the same date, (3) the sale of heroin on December 6, 1956, and (4) the transportation of heroin on that date, being violations of section 11500 of the Health and Safety Code. Each information contained an allegation of a prior narcotics conviction. The defendant moved to dismiss the informations on the two grounds provided by section 995 of the Penal Code, i.e., (1) that he had not been legally committed by a magistrate, and (2) that he had been committed without reasonable or probable cause. This motion was denied. Thereupon he entered a plea of "not guilty"; waived a trial by jury; stipulated that the cases might be heard on the preliminary transcript; did not testify or call any witnesses on his behalf; was found guilty of the charge of possession contained in the second count of the first information, and of the offense of selling, contained in the first and third counts of the second information; was found not guilty of all other offenses charged against him; and was sentenced to imprisonment in the state prison. The allegations respecting the prior conviction were found to be true. In the meantime, because of her death, the information against the defendant's wife was dismissed.

On this appeal, the defendant contends that the judgments should be reversed for two reasons, i.e., (1) that he was not accorded due process of law in that, by a series of circum-

*Assigned by Chairman of Judicial Council.

stances hereinafter related, he was deprived of the opportunity to obtain the testimony of an informer-participant, and (2) that the evidence in support of the charge of possession was obtained in violation of his constitutional right to be protected against unlawful searches and seizures.

Early in 1957 complaints were filed against the defendant and his wife charging them with the offenses hereinbefore noted. During the preliminary hearing upon these complaints in the municipal court, which took place on February 6 and 26, 1957, officers of the State Narcotics Bureau and the San Francisco Police Department testified concerning two sales of heroin alleged to have been arranged by and made to an informer while they watched from a nearby automobile; these are the December 5th and 6th sales charged against the defendant in the two counts of the second information of which he was found guilty. These witnesses also testified concerning another alleged sale by the defendant to this informer, occurring on January 11, 1957, but which took place in the defendant's residence, out of their sight; that upon completion of this alleged sale the informer returned and reported to them that the defendant was in his residence preparing some heroin for sale, was then under the influence of heroin, and had a gun; that thereupon the officers broke into the flat and, without a warrant, arrested the defendant and seized some bindles of heroin which they found on the kitchen table. Possession of this heroin was the basis of the offense charged in count two of the first information of which the defendant was found guilty.

During the aforesaid preliminary hearing the defendant attempted to secure the identity of the informer, but objections by the district attorney to questions which would have revealed this information were sustained by the court. Motions to exclude the evidence and to dismiss the complaints because of the nondisclosure of the identity of the informer were denied. The defendant and his wife were held to answer to the superior court.

On March 15, 1957, informations were filed charging the defendant and his wife with the offenses for which they were held to answer. On March 18th of the same year they were arraigned and moved to set aside these informations under the provisions of section 995 of the Penal Code, urging that they were illegally held to answer in violation of their constitutional rights guaranteeing them due process of law, and that the evidence produced at the preliminary hearing was

insufficient to constitute probable cause. At this time other cases involving disclosure of the name of an informer were pending before this court. Upon suggestion by counsel for defendant that the principal point of law raised by his motion would not be "established" until these cases had been decided, the matter was not argued, but, by mutual consent, was continued to April 5th, and came on for hearing on that date. In the meantime the decision in *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821], holding that the name of a participant-informer must be disclosed, had been filed. At the April 5th hearing the district attorney contended that the decision in *People* v. *Lawrence, supra,* 149 Cal.App.2d 435, was not determinative of the point presented by the pending motion to set aside the information; that the failure to divulge the name of the informer at the preliminary hearing did not affect the legality of those proceedings; that there was sufficient evidence to hold the defendants to answer; and that disclosure at the time of trial in the superior court would comply with the requirements of the law as announced in the Lawrence case. (*People* v. *Lawrence, supra,* 149 Cal. App.2d 435.) The defendant claimed that the failure to disclose vitiated the whole proceeding and required a dismissal. It was indicated that the point in dispute would be decided in the cases awaiting decision by this court. Thereupon, the judge suggested, and all parties agreed, that the matter might go over until the pending cases had been decided. Counsel for defendant confirmed the appropriateness of such a procedure by stating that was what he had offered earlier in the day by his statement that the court might want "to put this matter over until there isn't any question to it." Further continuances were ordered from time to time until October 31, 1958, when the informations were dismissed. The record is not clear as to whether the order of dismissal was made on the pending motion or resulted from a request by the district attorney. At any rate, it followed shortly after the decisions in *People* v. *McShann,* 50 Cal.2d 802 [330 P.2d 33], *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39], and *Mitchell* v. *Superior Court,* 50 Cal.2d 827 [330 P.2d 48], which were filed on October 1, 1958, and made it clear that the prosecution must reveal the name of the participant-informer, the eyewitness nonparticipant-informer, and the informer whose information establishes reasonable cause to make an arrest and search without a warrant. It also was determined by these decisions that a defendant was entitled to

ascertain the name of an informer-participant on cross-examination at his preliminary hearing, and was not required to await his trial to obtain this information.

Forthwith new complaints against the defendant and his wife, charging the same offenses, were filed in the municipal court; a preliminary hearing was had thereon; it was stipulated that, in ruling thereon, a transcript of the prior preliminary hearing might be considered by the magistrate; in addition, in response to appropriate questions, a witness for the prosecution disclosed the name of the informer and testified that he had been killed in an automobile accident sometime in July 1957. Appropriate motions to strike the testimony and to dismiss, upon the ground that the People refused to disclose the name of the informer at the first preliminary hearing, were made and denied. The defendant and his wife were held to answer; informations were filed; and the proceedings now under review and heretofore noted took place.

The defendant was entitled to ascertain the name of the informer because he was a prospective material witness who could testify with respect to the transactions resulting in the narcotic sales charged as offenses herein (*People* v. *McShann, supra,* 50 Cal.2d 802), and also with respect to the information which he furnished the officers and which they claim constituted probable cause for their subsequent search and seizure without a warrant. (*Priestly* v. *Superior Court, supra,* 50 Cal.2d 812.) This information was demanded at the first preliminary hearing, and was disclosed at the second preliminary hearing. The defendant has been given the information requested. He complains, however, of the delay in disclosure, because the intervening death of the informer foreclosed his opportunity to call the informer as a witness. Whether the testimony thus produced would have been beneficial to his cause is problematical. However, in view of our conclusion, the effect of the problematical nature of such testimony upon the issue at hand need not be considered. The delay in obtaining the informer's name was occasioned by delay in the proceedings which the defendant initiated in the trial court to enforce his demand for disclosure. He consented to and was an active participant in the cause of this delay. Through his counsel, not only did he acquiesce in the suggestion that the decision upon his demand be postponed until the cases then pending before this

court had been determined, but also he requested such a postponement.

On the other hand, the informer's death was a mere fortuitous incident of the delay. The defendant legally may not complain of fortuitous incidents of a delay to which he has agreed. The reasons which foreclose a defendant from complaining because he was not tried within the time required by law when he has consented to the delay (*People* v. *Martinelli,* 118 Cal.App.2d 94, 96 [257 P.2d 37]), from asserting errors occurring in the course of his trial that were invited by him (*People* v. *Simmons,* 28 Cal.2d 699, 722 [172 P.2d 18]; *People* v. *Sternberg,* 111 Cal. 3, 9 [43 P. 198]), or from claiming that he was deprived of a fair trial by circumstances of his own making (*People* v. *Simmons, supra,* 28 Cal.2d 699, 722; *People* v. *Miller,* 185 Cal.App.2d —— [8 Cal.Rptr. 91]), analogously foreclose a defendant who consents to a delay in securing the name of an informer from complaining of the incidents of such a delay.

The defendant claims that his conviction of the possession charge is not supported by legal evidence, in that the only proof thereof was obtained through an unlawful search of his residence. (*People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

The entry of the officers into the defendant's residence on January 11, 1957, followed the receipt of information given them by the informer, as heretofore noted. Prosecution witnesses testified that they had known the informer for approximately five years, during which time he had supplied information concerning narcotics sales and other transactions which proved to be reliable; that he was the informer-participant in the December 5th and December 6th sales; that he had made two purchases of heroin from the defendant, at the latter's residence, on January 9th; and that during a conversation between the state narcotic inspector and the defendant, which occurred about a year previously, the defendant stated that he "had been fooling around" with narcotics but had not been "hooked."

On the occasion in question, when the officers broke through the back door of defendant's residence, which entered upon a porch, they shouted to the defendant that he was under arrest for a violation of the narcotics laws; proceeded into the kitchen, where they found bindles of heroin on the table, together with certain mixing paraphernalia; continued through the flat to a bedroom where they found the defendant;

placed him under arrest; and took him back into the kitchen where he upset the table, scattering the various items thereon about the floor.

Applicable constitutional provisions prohibit only unreasonable searches and seizures. (*Harris* v. *United States,* 331 U.S. 145, 150 [67 S.Ct. 1098, 91 L.Ed. 1399]; *Carroll* v. *United States,* 267 U.S. 132, 147 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]; *People* v. *Dillard,* 168 Cal.App.2d 158, 164 [335 P.2d 702].) In each instance where the legality of a search and seizure is under inquiry, the primary question is whether it is reasonable. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].) As in the instant case, the issue is raised most frequently where the search was conducted without a warrant. A search which is made as an incident to a lawful arrest, based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search even though made without a warrant (*United States* v. *Rabinowitz,* 339 U.S. 56, 60 [70 S.Ct. 430, 94 L.Ed. 653]; *Agnello* v. *United States,* 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; *People* v. *Ingle,* 53 Cal.2d 407, 413 [348 P.2d 577]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]; *People* v. *Rios,* 46 Cal.2d 297, 299 [294 P.2d 39]), and even though it occurs before rather than after the arrest. (*People* v. *Ingle, supra,* 53 Cal.2d 407, 413; *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535].)

The evidence before us supports the conclusion that the officers knew the defendant was engaged in the illegal sale of narcotics; had witnessed at least two such sales; on a previous occasion had been told by him that he had used narcotics; were informed by a source proven to be reliable that he then had heroin in his possession which he was preparing for sale, that he had a gun, and that he then was under the influence of heroin. This information, under established rules, constituted reasonable cause to make an arrest and search without a warrant. (*Draper* v. *United States,* 358 U.S. 307, 312 [79 S.Ct. 329, 3 L.Ed.2d 327]; *People* v. *Ingle, supra,* 53 Cal.2d 407, 412; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Maddox,* 46 Cal.2d 301, 304 [294 P.2d 6]; *People* v. *Dillard, supra,* 168 Cal.App.2d 158, 164; *People* v. *Barnett,* 156 Cal.App.2d 803, 806 [320 P.2d 128]; *People* v. *Dupee,* 151 Cal.App.2d 364, 367 [311 P.2d 568]; *People* v. *King,* 140 Cal.App.2d 1, 3 [294 P.2d 972].) The fact that a part of the information upon which the officers relied was

supplied by an informer did not depreciate its efficacy as a reasonable basis for their belief. (*People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *People* v. *Maddox, supra,* 46 Cal.2d 301, 304; *People* v. *Boyles, supra,* 45 Cal.2d 652, 656; *People* v. *Lawrence, supra,* 149 Cal.App.2d 435, 443-445; *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13, 17 [300 P.2d 222].)

Certain prerequisites to a lawful arrest are prescribed by sections 841 and 844 of the Penal Code. ██ In identifying themselves, advising the defendant of their intention to arrest him, and informing him of the cause of his arrest, the officers observed the formalities outlined in section 841, although compliance therewith was not required as the defendant was then engaged in the commission of an offense, i.e., the unlawful possession of a narcotic. (*People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]; *cf. People* v. *Herman,* 163 Cal.App.2d 821, 826 [329 P.2d 989].) ██ On the other hand, in breaking into the defendant's residence without first demanding admission and explaining the purpose for which it was desired, they did not comply with the provisions of section 844. However, in determining the legality of a search made as an incident to a lawful arrest, the law does not demand a strict compliance with the provisions of section 844, in every case. (*People* v. *Maddox, supra,* 46 Cal.2d 301, 306; *People* v. *Barnett, supra,* 156 Cal.App.2d 803, 807; *People* v. *Shelton,* 151 Cal.App.2d 587, 588 [311 P.2d 859]; *People* v. *King, supra,* 140 Cal.App.2d 1, 7.) At the time of their entry the officers had reasonable cause to believe that the defendant actually was engaged in the commission of a felony, i.e., the unlawful possession of narcotics; that he had a gun; and that he was under the influence of heroin. With this information at hand, in good faith they were entitled to conclude that if they informed the defendant of their presence and demanded admission before breaking into the premises, he might attempt to dispose of the narcotics then in his possession, or might attempt to obtain and use his gun. Under these circumstances, noncompliance with the requirements of section 844 does not compel the exclusion of evidence seized in the ensuing search. (*People* v. *Shelton, supra,* 151 Cal.App.2d 587, 588.) ██ "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844." (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6].) ██ When there is reasonable cause to make

an arrest, and the facts known to the arresting officer before his entry are not inconsistent with a good faith belief on his part that compliance with the formal requirements of that section is excused, a failure to comply therewith does not invalidate the search and seizure made as an incident to the ensuing arrest. The evidence in the case at bar brings it within the foregoing rule.

The judgment in each case is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.